<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SRIDHAR JAYARAMAN, <br><br> Plaintiff, <br><br> v. <br><br> BOARDWALK REGENCY, LLC, *et al.*, <br><br> Defendants. | Civil Action No. 22-1891 (MAS) (JBD) <br><br> **MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

  This matter comes before the Court upon Defendant Boardwalk Regency LLC d/b/a Caesar's Atlantic City's ("Boardwalk") Motion for Summary Judgment. (ECF No. 14.) Plaintiff Sridhar Jayaraman ("Plaintiff") opposed (ECF No. 15), and Boardwalk replied (ECF No. 16). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants Boardwalk's Motion for Summary Judgment.

**I. BACKGROUND**

  The uncontested facts of this case are, for the most part, simple and straightforward. This case arises from the theft of a bag allegedly containing $120,000 cash on Boardwalk's premises. (Def.'s Statement of Undisputed Material Facts ("SUMF") ¶ 1, ECF No. 14-2; Pl.'s Resps. to Def.'s Statement of Undisputed Facts ("RSUF") ¶ 1, ECF No. 15-3.)

On February 8, 2022, Plaintiff was a guest at Caesar's Hotel and Casino Atlantic City for a six-night stay.[1] (Compl. ¶ 4, ECF No. 1-1; Pl.'s Dep. Tr. 21:1-19, ECF No. 14-5.) During the early hours of February 8, 2022, Plaintiff and his girlfriend arrived at the "Toga Bar" (the "Bar"), which is within Boardwalk's premises, for a "nightcap." (Pl.'s Dep. Tr. 45:9; SUMF ¶ 1; RSUF ¶ 1; Compl. ¶ 5.) Plaintiff testified that while sitting in the Bar with his girlfriend, he had with him a black plastic shopping bag (the "Bag"), allegedly containing $120,000[2] in cash. (Pl.'s Dep. Tr. 29:9-30:5; SUMF ¶ 4; RSUF ¶ 4.) Plaintiff stated that he put the Bag on a chair at a high-top table across from his girlfriend, and then stepped away from the table. (Pl.'s Dep. Tr. 45:19-46:7; SUMF ¶ 5; RSUF ¶ 5.) Plaintiff, however, did not advise his girlfriend to watch the Bag as he stepped away. (Pl.'s Dep. Tr. 57:14-58:5.)

After Plaintiff stepped away from the table, an unknown male, later identified as Frederick Exume ("Exume"), approached Plaintiff's girlfriend and made conversation with her. (*Id.* at 45:23-46:7; Pl.'s Opp'n Br., Ex. B, ECF No. 15-2.) While conversing with Plaintiff's girlfriend, Exume reached under the table and extracted the Bag without her detection. (SUMF ¶ 4; Cert. of Nidhi Trikha ["Trikha Cet."], ¶¶ 10-14, ECF No. 15-2.) Exume then immediately exited the casino with the Bag. (*See* Def.'s Moving Br., Ex. G, Incident Report, ECF No. 14-5.) Upon returning

---

[1] Plaintiff characterizes his stay as a "marathon trip." (Pl.'s Dep. Tr. 21:13.) Plaintiff first arrived on January 27, 2022 and stayed at Boardwalk until February 2, 2022. (*Id.* at 21:5-7.) Thereafter, he stayed at Bally's Hotel and Casino for three nights, from February 2, 2022 to February 5, 2022. (*Id.* at 21:9-10.) Then, Plaintiff returned to Boardwalk on February 5, 2022 until February 11, 2022, during which time the facts underlying the instant action allegedly occurred. (*Id.* at 21:10-12.)

[2] This amount "largely represented" Plaintiff's winnings from both Boardwalk's premises and another casino. (Pl.'s Opp'n Br. 1, ECF No. 15; Pl.'s Dep. Tr. 28:17-30:8; Cert. of Sridhar Jayaraman ["Jayaraman Cert."], ¶¶ 4-7, ECF No. 15-1.)

from the restroom, Plaintiff noticed the Bag was missing and contacted Boardwalk's security. (Pl.'s Dep. Tr. 49:9-50:19; Jayaraman Cert. ¶ 16.)

Boardwalk's security investigated the incident, and Exume was identified through video surveillance as the individual that stole the Bag. (Ex. G, Incident Report.) Boardwalk was familiar with Exume because two days prior, Exume was ejected from Boardwalk for public urination and permanently banned by Boardwalk from its premises. (Ex. K, Exume Urination Report, ECF No. 14-5.) Boardwalk first learned that Exume was on its premises only after Plaintiff reported the incident to Boardwalk's security and Boardwalk's security officers watched the theft on video surveillance. (*See* Ex. G, Incident Report.)

Immediately preceding the theft of the Bag, Plaintiff conversed with Exume for approximately six minutes. (SUMF ¶ 7.) Plaintiff denies having had any conversation with Exume about the amount of money in the Bag. (Pl.'s Dep. Tr. 66:18-67:4.) Rather, Plaintiff testified that he only provided Exume with a cigarette and discussed generally whether either of them were winning during their stay. (*Id.*) Plaintiff indicated that he was familiar with Exume before this conversation because Exume had watched Plaintiff play blackjack. (Pl.'s Dep. Tr. 58:11-59:9.) Plaintiff also testified that Exume did not "come off as [a] threat." (*Id.*) At no point during Plaintiff's interactions with Exume did he learn that Exume was permanently banned from Boardwalk. (Pl.'s Dep. Tr. 46:19-24; Ex. K, Exume Urination Report.)

Notably, two days before the theft of the Bag, on February 6, 2022, Plaintiff was approached by Boardwalk security and "advised not to carry large sums of money on his person in a shopping bag." (Pl.'s Dep. Tr. 74:16-75:1; SUMF ¶ 13; RSUF ¶ 13; *see* Def.'s Moving Br., Ex. E, Baker Incident Report.) Security then escorted Plaintiff to his hotel room to store his money

in the safe provided in the room. (Pl.'s Dep. Tr. 40:1-14; SUMF ¶ 13; RSUF ¶ 13; *see* Ex. E, Baker Incident Report.)

On March 11, 2022, Plaintiff filed this lawsuit in New Jersey Superior Court, Middlesex County, asserting a single count of negligence against Boardwalk. (*See generally* Compl.) On April 4, 2022, Boardwalk removed this action to federal court. (ECF No. 1.) On April 13, 2022, Boardwalk filed an answer to the Complaint, asserting twenty-nine defenses. (ECF No. 6.) After completion of discovery, Boardwalk moved for summary judgment (ECF No. 14); Plaintiff opposed (ECF No. 15); and Boardwalk replied (ECF No. 16).

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56(a)[3] provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec.*

---

[3] Hereinafter, all references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

4

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which a nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

### III.   DISCUSSION

To establish a cause of action for negligence under New Jersey law, a plaintiff must prove four elements: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (citation omitted). For the reasons outlined below, even if the Court were to infer a relevant duty of care in this matter, Plaintiff fails

to provide any evidence to show that Boardwalk breached a duty it owed Plaintiff. As such, Boardwalk's Motion for Summary Judgment is granted.

### A. Duty of Care

The existence and scope of a duty of care are legal issues to be determined by the court. *Kuehn v. Pub Zone*, 835 A.2d 692, 697 (N.J. Super. Ct. App. Div. 2003) (citing *Carvalho v. Toll Bros. & Devs.*, 675 A.2d 209, 212 (N.J. 1996)). Generally, whether and to what extent a landowner owes a duty to an injured guest depends on whether the injured guest's status was "that of [a] business invitee, licensee, or trespasser." *Est. of Desir ex rel. Estiverne v. Vertus*, 69 A.3d 1247, 1254 (N.J. 2013) (quoting *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1113 (N.J. 1993)).[4]

It is undisputed that Boardwalk is a business owner, and that Plaintiff was a business invitee. *See Hopkins*, 625 A.2d at 1113 (finding that a business invitee is an individual that has "been invited on the premises for purposes of the owner," often for commercial purposes). As such, Boardwalk owed Plaintiff a duty of care to maintain a safe premises. *Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 691 (N.J. 2010) (citations omitted) ("It is well recognized that the common law imposes a duty of care on business owners to maintain a safe premises for their business invitees because the law recognizes that an owner is in the best position to prevent harm."); *see also Butler v. Acme Mkts., Inc.*, 445 A.2d 1141, 1143 (N.J. 1982) ("The proprietor of premises to which the public is invited for business purposes of the proprietor owes a duty of reasonable care to those who enter the premises upon that invitation to provide a reasonably safe

---

[4] An injured party's status does not "exclusively determine[] a landowner's liability for injuries, [but] an injured party's status is . . . helpful in determining the existence and scope of the duty of care owed." *Amentler v. 69 Main St.*, No. 08-0351, 2011 WL 1362594, at *5 (D.N.J. Apr. 11, 2011) (citations omitted); *Hopkins*, 625 A.2d at 1116 ("The [duty] analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct.").

place to do that which is within the scope of the invitation.") Courts have interpreted this general duty to provide a safe premises as including "a duty to protect patrons . . . from foreseeable criminal acts of third parties occurring in their premises." *Kuehn*, 835 A.2d at 311-12 (citing *Clohesy v. Food Circus Supermarkets, Inc.*, 694 A.2d 1017, 1021 (N.J. 1997)); *see also Butler*, 445 A.2d at 1145 (quoting Restatement (Second) of Torts, § 344 at 223-24 (1965)) ("A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such purpose, for . . . intentionally harmful acts of third persons.").

In considering this duty to protect patrons from foreseeable criminal acts by third parties, New Jersey courts have adopted the Restatement (Second) of Torts § 344 Comment (f). *Mestre v. Garden Homes Mgmt. Corp.*, No. 16-3231, 2019 WL 3761127, at *3 (D.N.J. Aug. 9, 2019) (citing *Kuehn*, 825 A.2d at 698-99). Comment (f) provides:

> Duty to police premises. Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

RESTATEMENT (SECOND) OF TORTS § 344 cmt.f (1965).

Here, Boardwalk contends that it did not owe Plaintiff a duty to protect him from Exume's conduct because it did not know or have reason to know that Exume would steal Plaintiff's property. (Def.'s Moving Br. 5; *see* RESTATEMENT (SECOND) OF TORTS § 344 cmt. f.) Boardwalk

7

contends this is because "[n]o reasonable juror could find" that Boardwalk was on notice that Exume, "a person ejected [from Boardwalk] for urinating inside the casino[,] would later commit [theft]." (*Id.*) On the other hand, Plaintiff maintains that Boardwalk owed Plaintiff a duty to protect him from the foreseeable criminal acts of others, such as Exume's. (Pl.'s Opp'n Br. 4.) Plaintiff contends that it was foreseeable that "a theft of property would occur on the floor of a busy Atlantic City casino." (*Id.*) As put by Plaintiff, it is reasonably foreseeable that a person permanently banned from a casino—no matter the reason—would later reenter to commit the crime of theft.[5] (*Id.*)

Significantly, under the Restatement, even if Plaintiff can establish that Exume's conduct was reasonably anticipatable, warranting imposition of a duty, such finding is not in and of itself a duty, but rather, serves as a prerequisite to establishing the duty identified in Comment (f). *See* RESTATEMENT (SECOND) OF TORTS § 344 cmt. f; *cf. Sims v. Tropicana Ent., Inc.*, No. 13-1981, 2016 WL 4743626, at *4 (D.N.J. Sept. 9, 2016) (providing an example where this court considered Comment (f), conducted a foreseeability analysis, and sought to determine if a defendant "had a duty to take reasonable steps to prevent [the] danger" posed by an individual). Specifically, the Restatement provides that where a defendant "should reasonably anticipate careless or criminal conduct on the part of third persons . . . [it] may be under a duty to *take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.*" RESTATEMENT (SECOND) OF TORTS § 344 cmt. f.

---

[5] Plaintiff contends that it was immaterial that the alleged perpetrator was banned from the casino for "public urination" and argues that it is conceivable that one who "is unhinged enough to urinate in a private casino is likely to commit a more serious crime against person or property." (Pl.'s Opp'n Br. 4.)

With the above duty in mind, even if the Court assumes that Exume's theft of the Bag was foreseeable third-party criminal conduct and therefore a duty should be imposed, which the Court does not substantively address here, Plaintiff must still provide some evidence that Boardwalk breached its duty to either: (1) provide sufficient security services to afford Plaintiff reasonable protection from Exume's conduct; or (2) take reasonable precautions to protect against Exume's criminal conduct. Ultimately, the record contains no evidence purporting to show either theory of breach.

**B.     Breach**

Even if the Court assumes that Boardwalk owed Plaintiff a duty to take reasonable steps to prevent Exume's theft, Plaintiff provides no evidence to suggest that Boardwalk breached that duty. Plaintiff offers only one argument for how Boardwalk breached its duty of care; Plaintiff argues that Boardwalk failed "to enforce its ban of Exume from the premises," therefore violating its duty of care to afford reasonable protection to Plaintiff from Exume's criminal conduct. (Pl.'s Opp'n Br. 4.) The record, however, contains no evidence suggesting that: (1) Boardwalk failed to provide sufficient security services; or (2) Boardwalk otherwise failed to take reasonable measures to protect Plaintiff from Exume's conduct. (*See generally* Pl.'s Opp'n Br.; RSUF (pointing only to evidence that Exume was banned from the premises, but providing no evidence purporting to show that security lapses or a failure to adequately police the premises were responsible for Exume's entry into the casino and subsequent theft)). The Court briefly discusses both theories of breach.

### i. Inadequate Security

First, Plaintiff does not provide evidence that Boardwalk provided insufficient security services. Instead, the record only reasonably suggests that Boardwalk provided sufficient security services to protect patrons from thefts.

Boardwalk provides evidence that on February 6, 2022, two days before Exume's alleged theft, Plaintiff was approached by Boardwalk security and "advised not to carry large sums of money on his person in a shopping bag." (Pl.'s Dep. Tr. 45:19-46:7; SUMF ¶ 13; RSUF ¶ 13; *see* Def.'s Moving Br., Ex. E, Baker Incident Report.) Security then escorted Plaintiff to his hotel room to store his money in the safe provided in the room. (Pl.'s Dep. Tr. 40:1-14; SUMF ¶ 13; RSUF ¶ 13; *see* Def.'s Moving Br., Ex. E, Baker Incident Report.) To this end, the evidence in the record only suggests that: (1) Boardwalk maintained security services that were cognizant of the risks to a patron carrying large sums of money in an unsecured bag; and (2) those security services were taking precautions against future thefts by advising Plaintiff to keep his winnings in a safe provided by Boardwalk.

### ii. Failure to Take Reasonable Precautions to Prevent Theft

Second, Plaintiff does not provide evidence that Boardwalk failed to take reasonable precautions to enforce its ban of Exume. The record establishes that Boardwalk banned Exume two days prior to Exume stealing the Bag. (Ex. K, Exume Urination Report.) Plaintiff contends that Boardwalk's failure to enforce such a ban is a *per se* breach of its duty to protect against criminal conduct on its premises. (*See* Pl.'s Opp'n Br. 4) This contention is misguided. The question for the Court to decide here is not whether Boardwalk succeeded in stopping any and all criminal conduct from occurring; a business owner is not under an absolute obligation to stop a crime from occurring, regardless of whether it reasonably sought to prevent that harm. *See*

RESTATEMENT (SECOND) OF TORTS § 344 cmt. f (providing that where criminal conduct is foreseeable a business owner "may be under a duty to *take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection*" (emphasis added)). Instead, the question for the factfinder is whether Boardwalk "took reasonable steps to prevent" certain anticipatable danger. *See Clohesy*, 694 A.2d at 1029-30 (finding that security guards "serve as a deterrent to crime and assist the police as would any other citizen . . . [s]ecurity guards, therefore, do not serve as detectives to prevent crime"); *Sims*, 2016 WL 4743626, at *4 (seeking to determine at summary judgment if a defendant "had a duty to take *reasonable steps* to prevent" potential danger posed by an individual (emphasis added)).

      Here, Plaintiff provides no evidence to suggest that Boardwalk or its security services failed to take reasonable steps to prevent Exume from entering the premises or that Boardwalk failed to take reasonable steps to prevent the theft from occurring. Plaintiff does not offer, for example, any suggestions for what more Boardwalk should have done to ensure Exume did not enter the premises after being banned. (*See generally* Pl.'s Opp'n Br.) Instead, Plaintiff conclusorily proclaims that Boardwalk's security failed "to enforce [Boardwalk's] ban" of Exume without specifying how Boardwalk failed to do so or providing evidence as to what reasonable steps Boardwalk failed to take to enforce the ban. (*Id.*) Such arguments are insufficient to survive summary judgment. *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989) (finding that a "nonmoving party . . . cannot simply reassert factually unsupported allegations contained in its pleadings" and survive summary judgment (collecting cases)).

      Moreover, the evidence that the Court has been provided in the record does not support a finding that Boardwalk failed to take reasonable steps to enforce its ban of Exume. This is because there is no evidence in the record that Boardwalk knew Exume was on the premises but did not act

11

to remove him, or that Exume did anything that reasonably should have apprised Boardwalk's security of Exume's presence. (*See generally* Pl.'s Opp'n Br.; Pl.'s Dep. Tr. 46:9-17.) Instead, the evidence in the record shows that Boardwalk did not become aware of Exume's presence on the premises until *after* reviewing video surveillance of the theft while investigating the incident, and Plaintiff himself testified that Exume did not "come off as [a] threat" prior to the Bag theft. (*See* Ex. G, Incident Report; Pl.'s Dep. Tr. 46:9-17.) Moreover, Plaintiff testified that at no point during Plaintiff's interactions with Exume did he learn that Exume was permanently banned from Boardwalk two days prior for public urination. (Pl.'s Dep. Tr. 46:19-24.)

In light of the above, and the evidence in the record, the Court finds that there is no genuine dispute of material fact as to breach in this matter because Plaintiff provides no evidence to suggest Boardwalk breached its alleged duty owed to Plaintiff. Thus, even if Boardwalk owed Plaintiff a duty, Boardwalk's motion for summary judgment must be granted where there is no evidence to establish Boardwalk breached that duty.

### IV.   CONCLUSION

For the reasons set forth above, the Court grants Boardwalk's Motion for Summary Judgment. The Court will enter an Order consistent with this Memorandum Opinion.

s/Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**